Arguments of Secrecy between Ms. Stein and Mr. Wallace, W. Allen, and Mr. Steele. May it please the Court, my name is Greg Wallace and I represent Chester Brantley and the Social Security Disability Appeal. With the Court's permission, I'd like to reserve three minutes of my time for rebuttal. Mr. Brantley suffered a traumatic brain injury in July of 2003. Apparently due to a seizure, he went into respiratory failure. He was not able to be revived at the time. His brain suffered from a deprivation of oxygen. He was in a coma for two months, almost two months. The one doctor wrote that he was not expected to recover, but he did come out of the coma and was discharged in December of 2003 with impaired cognition and significantly impaired memory, secondary to his brain trauma. The agency found him disabled from 2003 until 2008, at which time a prior ALJ determined that his disability had ceased. Mr. Brantley filed the claim that is the subject of this appeal in 2010, claiming that he was disabled from the effects of this brain trauma. Now, the ALJ found him not to be disabled, relying primarily on two reports of consultative examiners that were issued in 2010. Dr. Siegel, who gave a physical, did a physical examination, and Dr. Amos, who is a clinical psychologist, who did a mental examination. Now, there are two issues before the Court on appeal. Was that sufficient to find that he was able to have some sort of work under the law? Dr. Siegel found that he had no physical limitations, and Dr. Amos concluded that he had significantly impaired memory and that he had difficulty performing step-by-step instructions and some difficulty performing work on a timetable. And the ALJ considered those reports and decided that in light of them, as well as the conclusions of the non-examining agency doctors, that Mr. Brantley was not disabled. Now, the first issue is whether substantial evidence supports the ALJ's decision when neither Dr. Siegel nor Dr. Amos were provided with any of the records of Brantley's earlier disability from the brain trauma in July 2003. Was any objection raised before the ALJ or before any of the agencies up to this point? We actually submitted the records to the ALJ in 2012. The ALJ considered it, but did you ask that it be remanded to these doctors to see if it would make any difference? Your Honor, the record does not indicate that. The ALJ has an independent duty to develop the record here, and the consultative evaluations were performed early on after Mr. Brantley filed his claim, apparently at the request of the State Disability Determination Agency. Well, it would have been easy to resolve this problem way back at the ALJ proceeding, right? Just say, Judge, we'd like for you to ask these consultative doctors to look at the background, you know? And it could have, right? Or she, I don't know whether it was a man or a woman. Well, we don't know. The ALJ had the evidence in front of her, and she was aware of that evidence and apparently did not think independently that there was any need to remand or to submit that evidence to these doctors after the fact. There's no question but that the ALJ had the medical records at that time. Yes, there's no question. They were submitted in 2012, January of 2012, I believe. And so the ALJ had those medical records in front of her, and yet she relied on the opinions of the consultative examiners when those consultative examiners had not seen those records. Now, the commissioner's regulation says that consultative examiners will be provided with any necessary background information about your condition. Did either one of them ask for the prior records? Doctor, both of them acknowledged that they had not received any other records. Doctor Amos did receive Doctor Siegel's report, which was just a month earlier. I don't think you understood what I was asking. The question I was asking was really whether the ALJ had the medical records at the time Siegel and Amos did their evaluations, not whether you later submitted them. This was not before the ALJ at that point in the timetable of the claim. This was still with the State Disability Determination Agency who sent Mr. Brantley out for these consultative evaluations. It seems like something occurred here that perhaps was needless procedurally. I mean, wouldn't the ALJ have wanted, if the ALJ had been requested, wouldn't the ALJ naturally have wanted Siegel and Amos to have had an opportunity to review their own opinions in light of the medical records? So was there a request that that be done, or did you all just sort of wait until the ALJ decided the matter? Your Honor, the ALJ, the agency has had these records. They had the records in connection with Mr. Brantley's earlier disability claim. In fact, it was based on these records that the agency had. But the ALJ was apparently not responsible for the fact that neither Siegel nor Amos had the records. Wouldn't the first objective have been to strengthen the opinions of Siegel and Amos by making sure that their opinions were given in light of the prior medical history and records? Yes, and the ALJ did not do that. And the ALJ was requested to do that by you? I don't know if the record indicates whether the ALJ was requested to do that or not. I know that Mr. Bartels, who was the attorney in the case at that time, did submit these records in January of 2012. It sounds like what may have happened is that the plaintiff's counsel waited for an unfavorable ruling and then started complaining about what the ALJ had done and hadn't done. Your Honor, there's no evidence in the record that we were trying to sandbag the ALJ. I don't mean that. I'm just saying that if you want something to happen, you've got to ask for it. I'm not even saying you can't get relief today. I'm just saying, you know, if you want evidence to be considered, you've got to make sure the evidence is considered. Well, the evidence was submitted to the ALJ, and the ALJ has an independent duty. But what you wanted was not for the ALJ to look at it. You wanted Siegel and Amos to look at it. At least that's the complaint today. Yes, and that was made to the appeals counsel. That argument specifically was made to the appeals counsel as grounds for reversing the ALJ's decision. And the appeals counsel decided not to reverse the ALJ's decision on that ground before the claim left the agency and got into district court. So the ALJ has an independent duty to review the medical evidence. And this is not an adversarial, these Social Security hearings are not adversarial proceedings. And you're right, I think it would have been better, and I don't know again from the record whether that request was specifically made. I know that there's a cover letter that's sent with the evidence, and I don't think, if I recall after looking at that, that there was a specific request made with the cover letter. But you're right. But even if that request was not made, the ALJ still has an independent duty to review the medical record. And it was clear from Dr. Amos's report that he had not received that evidence. In fact, he said specifically that Brantley's medical history was hard to follow, and he said that it would be very helpful to have had objective medical records to explain Brantley's difficulties. Now, the ALJ has an independent duty, once she reads that, to make sure those doctors get those records under the regulations. What did the district court say about that? I'm sorry? What did the district court say about that? The district court said that the ALJ did not act improperly in this. But the regulations say that all necessary background information about your condition has to be provided to the consultative examiners. In some way, I thought the district court said the ALJ should have done it, but it was not prejudicial. Not prejudicial, that's right, because the court speculated that there was no harm done to Mr. Brantley here. But, you know, I'm not a medical doctor. The district court judge is not a medical doctor. All I know is what Dr. Amos himself said, who was the clinical psychologist, who said it would have been very helpful to have these records in order to make his assessment. And, in fact, one of the records here was his hospitalization records, which indicated that he had an organic mental disorder, that he was cognitively impaired. Dr. Amos deferred on axis two of his diagnosis, which is the cognitive functioning, even though there were IQ scores suggesting that Mr. Brantley functions in the mild-middle retardation range. But Dr. Amos deferred a diagnosis there because he didn't have the, in part, I think, because he didn't have these records. Also, there was a psychological report from 2004 by Dr. Junker, which the agency had previously relied on in finding Mr. Brantley not disabled. The fact of the matter is, Your Honor, that none of these records were given to either one of the consultative examiners whose opinions then the ALJ relied on on Mr. Brantley's current claim to deny him a disability. And it's our contention that the ALJ's failure to ensure that these consultative examiners had this necessary background information violated the regulations and renders these doctors' reports not substantial evidence to support her decision. Thank you, Your Honor. May it please the Court, Richard Winters for the Commissioner. The most important background to this case is not Claimant's medical records from 2003. No, the most important background to this case is this. Immediately preceding the alleged onset date of February 27, 2010, we have an adjudicated two-year period when Claimant was not disabled. This is a decision of an ALJ in 2010 that is binding. It's binding on the Claimant. It's binding on the Commissioner. And that's why the ALJ considered the prior medical records, because under this Court's decisions in Drummond and Dinard, we had to do so to see if there had been any medical improvement. But otherwise, he's bound by the findings of the prior ALJ. That case cannot be reopened barring proof of a fraud, and it's not subject to judicial review. That's the important background. And the Commissioner's position is that only in this context can the Court consider whether the medical records from the prior file, the pre-medical improvement records, were necessary background information that had to have been given to Dr. Amos and Dr. Siegel before they conducted their consultative examinations. And this begs the question, how can medical records from 2003 and 2004 reasonably be considered necessary when Claimant's disability had ceased on March 31, 2008, and he was found not disabled at any point in time two years after that? That's a matter of law. His disability ceased. So why would it be necessary for the agency to provide records from before the finding of not disabled? Well, I mean, the simple answer is that the man's prior medical history may be affecting and may be even determining his current health status. I mean, that's a very easy thing to answer. Well, Your Honor, we would... I mean, an ALJ is not a doctor. Whether her opinion might have been different had she had the submissions from the opinions of the doctor who would have reviewed the records, we don't really know the answer to that. It would seem. You can tell me where I'm wrong about all that. I know what you said, your view of the law is, but the assertion that the medical records being provided to these physicians and then those physicians providing the opinion to the ALJ would not have made any difference, I don't think you've explained that. Maybe you can do so now. They only make a difference to the extent that they reflect that he was disabled during the only relevant period in this case, and that's February 27, 2010. Well, and that's pretty significant, because you would expect the fact of a past disability and the circumstances of how that came about to affect the question of whether he's disabled at a later period of time. Without regard to somebody's binding decision that the period of disability ended, that doesn't make the earlier period of disability irrelevant in a subsequent proceeding. It doesn't tell us anything. Right, but the claimant still has the burden of proving that he became disabled when he hadn't been disabled for two years. Something must have happened. Well, and probably the most highly relevant information to that in this particular case, given these particular facts, is quite arguably his past history. Not to the point of necessity. Yes, as Dr. Amos himself said, it would have been very helpful to have some objective medical evidence to explain his difficulties. The claimant still must show that he became disabled. And Dr. Amos himself did not go back to the agency and say, excuse me, but I cannot conduct the examination if I don't have the prior medical records. No, he was able to proceed with the achievement of intelligence testing. He was able to render an opinion. Well, the position at the ALJ, I'm not sure how we got to this. It seems to me that probably this could have been remedied procedurally along the way, and our court wouldn't needn't be dealing with this. But basically the ALJ, who, as Judge Clay points out, is not a doctor, was placed in the position of trying to make sense of two pretty uninformed opinions in view of information supplied to the ALJ, a non-doctor at a later time. Well, Your Honor, we wouldn't characterize Dr. Amos in particular's opinion as uninformed because it was based on his examination. It's based on what Dr. Amos had, but it's not based on possibly the most relevant evidence in this particular case. Right, but the court, in order to reverse, would have to find that the agency violated 404.1517, which says that the agency is obligated to provide all necessary background information. And given the fact that there's this prior two-year adjudicated period when he wasn't disabled, how could the pre-improvement medical history be particularly probative of whether he was disabled in 2010? It isn't. Yes, he was very seriously ill. He was in a vegetative state, but he had rehabilitation, and over a four-year period he got to the point where he had medically improved, and in a binding decision he was found no longer disabled. He did not ask the Appeals Council to review that. Instead, within the period of time in which he could have asked the Appeals Council for review, he filed another application for disability. Is this the state claim you're referring to, or are you talking about the federal Social Security claim? A federal Social Security claim. And to the question of whether or not the claimant ever asked the administrative law judge to send the records to Dr. Amos and Dr. Siegel, the claimant did not. The record would have reflected such a request. There's no such request. There's not really a dispute that the ALJ has an independent duty, right? Right. But the reason the ALJ looked at the records, well, for two reasons. One, they were submitted by the claimant 18 months after the examination. Well, and the ALJ obviously found them highly probative. Well, the ALJ had to consider them because of Drummond and Dennard, and the question the ALJ has to ask himself, or herself in this case, was there any medical improvement such that the mental or the physical residual functional capacity assessments need to be changed? And she concluded that the physical assessment of the first ALJ was too restrictive, but she concluded that the mental RFC of the first ALJ should be adhered to. That's why the review was conducted of the prior medical records. But the district court said that the agency has an obligation to send the prior records to the consultative doctors, right? I don't believe so, Your Honor. I do not recall the district court finding that the agency should have under 404.15.17 provided the records. I think the court said that the agency wasn't required. The court said at one place it will give the examiner any necessary background information about the claimant's condition. Right. And our position is that the prior medical records from pre-improvement records from before this intervening period where he was not disabled over two years, those were not necessary medical records. But Dr. Amos said it would have been helpful, right? Yes, it would have been helpful. But that's not what the regulation says. It doesn't say we'll give you any and all helpful medical records. It says necessary background information for you to conduct your examination. Did Dr. Amos find that the claimant was totally disabled? He said he had a GAF of 50. No. He did not, okay. Well, he didn't render an opinion on disability, which of course is a judgment reserved to the commissioner. Right. But he said he had serious memory difficulties manifested in two things, difficulties problem-solving and with following step-by-step instructions. And the ALJ took that opinion, and it's reflected completely in the RFC assessment. What's the GAF score that puts you in a total disability? I believe that would be under 50, but, Your Honor, the agency has never used GFA scores to assess disability. And recently the American Psychiatric Association dropped the GFA scores as a legitimate means of assessing current functioning. So, first of all, we don't rely on them. The ALJ mentioned the score but said it wasn't supported by the longitudinal record. What do you say about this Wilson v. Commissioner case from our circuit that seems to say that to excuse noncompliance simply because there's substantial evidence that a different outcome on remand is unlikely should not be allowed? Well, first of all, Your Honor, we would suggest that there's no noncompliance here. The agency followed 404 to provide the necessary background information, and that background information didn't include pre-medical improvement records. Well, that's to the contrary of your opposing counsel's argument. It's also contrary to what the ALJ, in fact, did. Well, as I said, Your Honor, the ALJ did it because she was required to do it under Drummond and Denard. I don't know why this wouldn't be the kind of... I mean, you would expect, assuming for the moment, the validity, I mean, and we must, the validity of the finding of non-disability. You would nevertheless expect, given what happened with this plaintiff, you would expect some pretty serious incapacity to persist, whether it met the definition of disability under the Social Security Act. I mean, we're not doctors, but it defies common sense to suggest that all the prior stuff wouldn't be very important. Right, but, Your Honor, the examiners saw the claimant themselves. They were able to glean some background from him, and the claimant was not the same person in 2010 as he was back in 2003 when he was in a vegetative state for a period of time. The claimant drives an automobile every day. He's able to shop for groceries. He's able to attend to his personal needs and do household chores. He socializes with friends. He plays video games every day, which require quite a bit of concentration, and at one point in time, he even returned to his past relevant work as a forklift operator. He's simply not the same person, and to suggest that it was absolutely necessary... Well, he claims he wasn't able to catch on. That's right. And frankly, Your Honor, it's a little perplexing that the claimant insists that these prior records would somehow help his case because not only are they, as I say, from before the adjudicated two-year period, but if Dr. Amos and Dr. Siegel had actually reviewed those records, they would have seen a history of malingering. He malingered multiple times during examinations in the past. If anything, if they had seen those records, it might have adversely affected how they viewed him. And as the district court said... Well, I mean, they might have been just as likely to harm as to help. You could be right about that. On the other hand, to argue that they're not in some way relevant seems to me a bit of a common-sense stretch. No, I'm not arguing that they're not relevant. What I'm arguing is that they're not necessary. Well, I mean, this argument started with the commissioner's earlier decision is binding on us. Well, it is binding. I understand. This is not a medical improvement case. We can't relitigate that. Now, in my remaining time, if I could just touch briefly on Issue 2. The commissioner would like to bring to the court's attention that claimant mischaracterizes our position on this issue. On page 8 of the reply brief, claimant suggests that we're arguing that the ALJ was not required to include all of Dr. Amos' mental limitations because the ALJ also relied on the opinions of Dr. De La Torre and Dr. Sachs, the non-examining state agency medical consultants. But the commissioner said no such thing. In fact, our position is that the specific difficulties that Dr. Amos identified, the ALJ incorporated in the RFC, and because then the hypothetical posed to the vocational expert reflected the RFC in all respects, the ALJ properly relied on the vocational expert's testimony that there were available jobs that he could do. If there are no further questions, the commissioner respectfully asks the court to affirm the decision below. All right. Any rebuttal? May it please the court, just a couple of quick points on rebuttal. The commissioner's entire argument is that because a prior ALJ said that Mr. Brantley was not disabled in 2008, that the ALJ had no duty to ensure that necessary medical information about Mr. Brantley's 2010 claim was provided to the two consultative doctors. The prior ALJ's opinion is not binding on the court or, for that matter, on the current ALJ for the period from 2010 forward. And as the court has suggested by its questions, the prior medical evidence, since Mr. Brantley is claiming disability based on the effects of this brain trauma, the prior medical evidence of his brain trauma is relevant to his claim and should have been provided to these consultative doctors. Now, the fact that he was adjudged not disabled by the ALJ in 2008, Mr. Brantley was not represented by counsel before that ALJ. He did not appeal that decision. And while he disagrees with that decision, obviously because he didn't appeal that decision at the time, we cannot go back and relitigate that. His disability ceased for all legal purposes at that time. But his claim in 2010 looks to his disability beginning in 2010 and going forward. And the ALJ's decision in 2008 is not binding on the current ALJ in deciding whether he's disabled from 2010 forward. And so simply to say, well, because the prior ALJ said he wasn't disabled, then that makes all that prior pre-improvement medical evidence, as the commissioner describes, irrelevant, I think is a leap here and certainly not consistent with the ALJ's duty under the regulations. What relief do you ask for? That it be remanded? We would ask for this court to remand the case so that the consultative examiners can review his prior evidence and see whether that makes a difference in their opinions. Do you know whether they're still practicing or anything like that? I don't, but they could send them out for new consultative exams and provide that evidence then. What about the evidence of malingering? I mean, the showing is that you have to, the claimant has to show he's been prejudiced or deprived of substantial rights. What about the fact that there's, you know, good as well as bad in the old records? I see my time's up. May I have a moment to answer your question? Yes. Thank you. Yes, two of the prior psychological examiners found him malingering. Two did not, including, and then there was the fifth one who rendered an opinion in 2004 upon which his disability was based. So if Mr. Brantley's credibility is at issue, why not provide the current consultative doctors with all the medical evidence they need to make that decision? All right. Thank you, Your Honor. Case is submitted. May call the next case.